Dear Representative Diez:
This office is in receipt of your request for an opinion of the Attorney General in regard to handicapped parking violations. You indicate you have been consulted by local law enforcement officers on this matter and they feel they do not have the authority to issue a citation to an individual who parks in a handicapped parking space on privately-owned property. Accordingly, you present the following questions:
 1. Does R.S. 40:1742 authorize law enforcement officers to enter onto privately-owned businesses in order to issue tickets to those individuals who unlawfully park in parking spaces designated for use by the handicapped; and
 2. Is there another provision of state law which would prohibit law enforcement officers from performing this task?
We find in Title 40, Public Health and Safety, Chapter 8, Building Regulations, Part V, Equal Access to Public Facilities for Physically Handicapped, is R.S. 40:1742, entitled, Parking Spaces for Certain Disabled Persons, providing in pertinent part as follows:
 A(1) Each state agency and political subdivision having jurisdiction over street parking or publicly owned and operated parking facilities shall provide a minimum number of specially designed and marked motor vehicle parking spaces for the exclusive use of persons whose vehicles are identified by license plates or parking cards for the mobility impaired which contain the word "handicapped" embossed on the license plate or parking card. The motor vehicle parking spaces shall adhere to the ADAAG specifications. The minimum number of such parking spaces shall be established by ADAAG.
 (2) * * * * * * * * * * * * * * * * * * * * * * * * * *
 (3) * * * * * * * * * * * * * * * * * * * * * * * * * *
 B(1) Each state agency and political subdivision having jurisdiction over state parking, publicly owned and operated parking facilities, public facilities, or public facilities for accommodation shall provide for and enforce a penalty of two hundred seventy-five dollars for persons who park in spaces for the mobility impaired who do not have a license plate for the mobility impaired which contains the word "handicapped" embossed on the license plate or a properly displayed parking card issued pursuant to R.S. 47:463.4 or 463.4.1.
 (2) In addition to such fine, the offender may also be required to pay the towing fee and any storage costs which are incurred.
 (3) (a) In addition to all fines, fees, costs, and punishment authorized by this Subsection, any parish which institutes a formal program of utilizing disabled volunteers to assist the law enforcement agency in enforcing the provisions of this Subsection may provide for and enforce an additional twenty-five dollar fine for each violation of such provisions.
 (b) All monies collected by the court from such additional fine shall be forwarded by the officer of the court who collects the same to the parish governing authority within thirty days after the fine is collected.
 (c) The proceeds of such additional fine shall be used by the parish governing authority exclusively to fund the formal program of utilizing volunteers to aid in enforcing the provisions of this Subsection.
 (4) Notwithstanding R.S. 40:1743, any owner or lessee of a public facility who fails to maintain spaces reserved and designated for the exclusive use of vehicles bearing a special license plate or parking card issued to a mobility impaired driver free of obstructions shall be fined not more than five hundred dollars.
Under this provision we find political subdivisions "shall" provide for and enforce a penalty for persons who park in spaces for the mobility impaired who do not have a license for such parking. We further note that this extends to political subdivisions having jurisdiction over "publicly owned and operated parking facilities" as well as "public facilities". Moreover, the statute further provides "any owner or lessee of a public facility who fails to maintain spaces reserved exclusively for such vehicles" shall be fined. We must conclude by including "public facility" in addition to "publicly owned and operated facilities", indicates enforcement would apply to parking by the public on private property opened for business to the general public. This conclusion is supported by R.S. 40:1732 wherein the definitions are set forth for Part V, Equal Access to Governmental and Public Facilities for Physically Handicapped, to include in paragraph (9), "(a) "Public facility" means a commercial facility or place of public accommodations as such terms are defined in the ADAAG", (Americans with Disabilities Act Accessibility Guidelines) and "(b) A "Public facility" does not include a governmental facility."
Moreover, while this office observed in Atty. Gen. Op. No. 96-148 that political subdivisions may regulate parking and various other traffic controls on highways within their corporate limits that are not state maintained, and any additions first approved in writing by the state department of highways, the opinion further states, "Municipalities may also, upon request of the owner or manager of a parking area, adopt rules regulating traffic and parking within that area for safety and convenience."
The latter statement is consistent with the observation in Atty. Gen. Op. No 84-808 which relied upon R.S. 32:41(D) in holding as follows:
 In conclusion, it is the opinion of this office that based on the authority of the revised statutes, municipal law enforcement officers have the authority to enforce traffic ordinances in parking areas such as those in shopping centers when requested by the owner or manager of the shopping center.
R.S. 32:41(D), Power of local municipal authorities, provides as follows:
 D. Upon the request of either the owner or the person in charge of the general operation and control of a parking area, local municipal authorities may adopt local ordinances to:
 (1) Order stop signs, yield signs, or other traffic control devices erected at specified entrance or exit locations to a parking area or at an intersection in the parking area.
 (2) Regulate traffic in the parking area, including regulation by means of traffic control signals.
 (3) Prohibit or regulate the turning of vehicles or specified types of vehicles at intersections or other designated locations in the parking area.
 (4) Regulate the crossing of a roadway in the parking area by pedestrians.
 (5) Designate a separate roadway, drive, or lane in the parking area for one-way traffic.
 (6) Prohibit, regulate, restrict, or limit the stopping, standing, or parking of vehicles in specified areas of the parking area.
 (7) Designate safety zones, loading zones, and other restricted areas in the parking area.
 (8) Provide for the removal and storage of vehicles parked or abandoned in the parking area during snowstorms, floods, fires, or other public emergencies, or found unattended in the parking area, if the vehicles constitute an obstruction to traffic or if stopping, standing, or parking is prohibited, and for the payment of reasonable charges for the removal and storage by the owner or the operator of the vehicle.
 (9) Adopt additional reasonable rules with respect to traffic and parking in a parking area as local conditions may require for the safety and convenience of the public or users of the parking area.
We note that the R.S. 40:1742 designates a portion of the fine for "any parish which institutes a formal program of utilizing disabled volunteers to assist the law enforcement agency inenforcing the provisions of this Subsection". This brings our attention to R.S. 40:1400, Handicapped Parking Enforcement, which establishes within the office of state police a program to train and utilize volunteers in the enforcement of handicapped parking restrictions. The statute provides, after completion of training, that the volunteer may collect certain information substantiating a violation and submit such information to the respective state police troop headquarters in accordance with procedures established for the program by the office of state police. We have been informed that this is not yet operational inasmuch as R.S. 40:1400(B) provides, "The Program will become operative if and when funds are transferred to the office of state police fromthe office of disability affairs for such purpose." Therefore, when the program becomes operative this provision will allow disabled volunteers to assist the parish law enforcement in enforcing handicapped parking.
However, it is our conclusion with respect to violations of handicapped parking that at this time law enforcement officers are not only authorized but are mandated without request of the owner under R.S. 40:1742 to provide for and enforce a penalty for violations of handicapped parking on "public facilities" which we find is commercial private property which has parking for the general public doing business at the location. R.S. 32:41 extends this authority to other traffic regulations on private property upon request of the owner and adoption of an ordinance. Of course, we recognize that often violations of handicapped parking on private property will not come to the attention of the law enforcement without a request of the property owner or a situation where there are volunteers assisting in the enforcement.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 BY: _____________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR